# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| BRUCE HORTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:08CV1892 AGF |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM AND ORDER**

This action is before this Court[1] for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff Bruce Horton was not disabled and, thus, not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-34, or supplemental security income under Title XVI of the Act, id. §§ 1381-1383f. For the reasons set forth below, the decision of the Commissioner shall be affirmed.

Plaintiff, who was born on May 23, 1946, filed for benefits on June 21, 2006, at the age of 61, alleging a disability onset date of January 5, 2004, the date on which he had an acute hemorrhagic cerebrovascular stroke on the right side with left hemiparesis. After Plaintiff's application was denied at the initial administrative level, he requested a hearing before an Administrative Law Judge ("ALJ") and such a hearing was held on

---

[1] The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).

January 30, 2008, at which Plaintiff and a vocational expert ("VE") testified.

By decision dated February 28, 2008, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work, and, based on the VE's testimony, that there were supervisory jobs Plaintiff could perform, as Plaintiff had supervisory skills that were transferable from previous work to jobs that were within his RFC and that were available in the national economy. Plaintiff's request for review by the Appeals Council of the Social Security Administration was granted on August 22, 2008.

By decision dated November 21, 2008, the Appeals Council affirmed the ALJ's findings, with two exceptions. The Appeals Council noted that the ALJ erred in finding that Plaintiff was "closely approaching advanced age" when Plaintiff was actually "closely approaching retirement age"; and in, therefore, finding that if the case were decided under the Commissioner's Medical-Vocational Guidelines ("Guidelines"), 20 C.F.R. Pt. 404, Subpt. P, App. 2, the issue of transferable skills would not be material to Plaintiff's case. Accordingly, the Appeals Council modified the ALJ's decision only with respect to these two errors. The Appeals Council held, based upon the VE's testimony, that Plaintiff's past relevant work was semiskilled to skilled, and that he possessed skills that were transferable to jobs within his RFC and that were available in the national economy. Plaintiff has thus exhausted all administrative remedies and the decision of the Appeals Council stands as the final agency action now under review.

Plaintiff argues that the ALJ and Appeals Council committed reversible error in

determining that he possessed transferable skills, and in failing to treat Plaintiff as an unskilled worker, which would require a finding of "disabled" under the Guidelines. Plaintiff requests that the Appeals Council's decision be reversed and the case remanded for a new hearing.

## BACKGROUND

### Work History and Application Forms

The record indicates that from July 1980 to May 1989, Plaintiff worked as a commercial property manager and maintenance man. From June 1989 to October 2002, he worked as a radiator repairman (1989-1992), auto mechanic (1995-1998; 1999-2000), janitor (1998-1999), janitorial manager (2000-2001), and window washer (2001-2002). As an auto mechanic, he used tools such as valve grinders, sanders, and sand blasters, and frequently lifted over ten pounds and occasionally lifted 20 pounds. As a janitor, Plaintiff used mops and vacuum cleaners, and lifted up to ten pounds. As a janitorial manager, he supervised eight janitorial employees. As a window washer, Plaintiff used a scrubber and squeegee, carrying buckets of water and lifting ten pounds frequently. Plaintiff's last job was as a supervisor and worker in a metal roofing business that he owned with his wife (November 2002 - January 5, 2004). In this job, he used electric saws, panel formers, seamers, hemming tools, and electric drills. Plaintiff performed an assortment of tasks, including modifying figure dimensions, providing roofing estimates, and completing invoices and other paperwork on material orders. He indicated that he spent 50% of his time supervising two or three people, and that he hired employees. (Tr. 99-105.)

Plaintiff's earnings from 1989 to 2002 range from a high of $19,444.12 in 2002 to a low of no reported income from 1996 to 2001. His last reported annual income was $19,444.12 in 2002. Plaintiff's earnings records show no income for 2004 and 2005 (due to losses in his roofing business). (Tr. 76.)

On a Function Report dated July 3, 2006, submitted with his application for benefits, Plaintiff wrote that he no longer had the stamina or desire to do many of the things he used to do, like yard work, and that numbness in his left hand and left foot limited his physical activities. He sometimes showed roofing samples at people's homes, but then had to come home and take a nap. He spent his days reading magazines, watching TV, and taking naps. He went to church once a week, and occasionally to the store with his wife. He no longer wished to socialize and his wife told him that since his stroke he had become argumentative. He wrote that he had mood swings and became confused and irritated easily with company and with his wife. He also stated that he had trouble following instructions and that he would often start doing something and then forget what it was he had intended to do. (Tr. 91-98.)

**Medical Record**

As noted above, on January 5, 2004, Plaintiff had an acute hemorrhagic cerebrovascular stroke on the right side with left hemiparesis. Jason M. Mitchell, M.D., was his attending physician while he was hospitalized following the stroke, for four days, for occupational and physical therapy. From January 16 to January 29, 2004, Plaintiff went through a course of out-patient occupational therapy. After five sessions, he showed

4

significant improvement in his left upper extremity grip. (Tr. 150.)

At a follow-up visit with Dr. Mitchell on January 30, 2004, Dr. Mitchell noted that Plaintiff's blood pressure was very well controlled, and that there was progress in strength and sensation in Plaintiff's left hand. On March 24, 2004, Dr. Mitchell noted that Plaintiff still had residual symptoms of both numbness and burning at the arch of the left foot. On August 13, 2004, Plaintiff reported to Dr. Mitchell that his energy level was low and that he was unable to sustain his stamina throughout the day. Dr. Mitchell told Plaintiff that his stamina should improve over the next few months, and that his weight should be monitored closely. (Tr. 189-95.) On October 19, 2004, Plaintiff's occupational therapist stated that Plaintiff had impairments in climbing a ladder, walking on a roof, and gripping objects, and that it would be unsafe for Plaintiff to return to work as a roofer. (Tr. 183-84.)

On February 14, 2005, Plaintiff reported to Dr. Mitchell that he had been feeling "well overall," but had "difficulty getting back to work." (Tr. 191.) On January 10, 2006, Plaintiff reported to Dr. Mitchell that his left leg was still numb, that his endurance had not fully returned, and that he was having difficulty swallowing. (Tr. 190.) On April 25, 2006, Dr. Mitchell noted that Plaintiff's blood pressure was "well controlled." (Tr. 189.)

On October 17, 2006, state consultant Elbert H. Cason, M.D., examined Plaintiff for an evaluation in connection with Plaintiff's present application for disability benefits. Dr. Cason reported that Plaintiff could heel and toe stand, and squat; and that Plaintiff's back motion, leg raises, gait and station, and major muscle grip strength of lower

5

extremities were all normal. There was no finding of any neurological abnormalities, sensory, motor, or reflex problems; and no muscle atrophy, spasms, or tenderness were present. Dr. Cason stated that Plaintiff's knees, elbows, and hands all functioned normally, and that Plaintiff had regained most of the weakness in his left upper and lower extremities, but still had slight numbness in his left foot. Dr. Cason also noted that Plaintiff's current blood pressure was "excellent." (Tr. 208-11.)

On January 2, 2007, Dr. Mitchell stated that Plaintiff was "doing well" but still tired easily. (Tr. 223.) On September 14, 2007, Dr. Mitchell noted left foot drop, and also wrote that Plaintiff "works as a roofer . . . worried about working on roof." (Tr. 233.)

**Evidentiary Hearing of January 30, 2008 (Tr. 235-51)**

Plaintiff, who was represented by counsel, testified that he was 61 years old, was a high school graduate and had taken some college courses, and had work experience as a car mechanic, radio repairman, window washer, janitor, and floor polisher. Plaintiff testified that for the last nine years, his role in his and his wife's roofing company was to provide estimates for roofing jobs. Plaintiff testified that from 1987 to 1992, he had no reportable income because during that time, he was taking care of the eight-family apartment building that he owned.

Plaintiff testified that for the last three years, he was unable to do "very much at all" because he could not carry or climb the ladders that were needed to do roofing estimates. As of 2004, he was still doing estimates; his last estimate was performed in "2006 somewhere. I don't know exactly where."

6

Plaintiff testified that he had residual problems from the 2004 stroke, including numbness in his left hand and foot, as well as difficulty swallowing, which caused some choking. He had problems walking on his left foot due to the numbness that also caused him to lose his balance. He stated that his stamina was not as good as it used to be. He took care of his yard and visited his mother at the assisted-living home where she lived, to make sure that she had groceries and other necessities, and to take her "wherever she wants to go."

Upon examination by his counsel, Plaintiff stated that he rested at least three times a day, from one to three hours, depending on how strenuous his day had been. If he did too much "too many days in a row," he could not "do much the following couple of days." Plaintiff stated that he could lift ten pounds on a regular basis but struggled with carrying things such as ladders. He could carry a gallon of milk "all day long" if he got enough rest. Regarding mental changes since his stroke, Plaintiff testified that his wife told him that he got aggravated more easily now. He testified that he sometimes forgot what he was doing in the middle of trying to do something, which was not a problem before his stroke.

The VE testified that Plaintiff's former jobs were at the medium exertional level. The VE further stated that Plaintiff had supervisory skills from his prior jobs that were transferable to supervisory positions, especially to a job supervising housekeeping in a hotel or motel. He stated that such a position was a "precise match of transferability with respect to materials, products, subject matter and work procedures" in light of Plaintiff's

past janitorial and building maintenance work. The VE testified that such a job was at the light exertional level and existed in significant numbers in the state and national economy. The VE further testified that Plaintiff also had transferable skills for jobs in customer service/order taking at a lumber yard or home-improvement store, working with customers and contractors writing and filling orders.

The VE stated that a hypothetical individual with Plaintiff's vocational factors, who was able to lift and carry 20 pounds occasionally and ten pounds frequently, stand, walk, or sit, each for six out of eight hours, and occasionally climb stairs or ramps but never ropes, ladders, or scaffolds, and had to avoid the hazards of unprotected heights, would be able to perform the housekeeping supervisor job. Upon questioning by Plaintiff's counsel, the VE testified that an individual who had chronic problems in consistency of pace, or who needed to rest as much as testified to by Plaintiff, would not be able to perform this job, and that the job required the ability to climb "some" stairs.

**ALJ's Decision of February 28, 2008 (Tr. 15-21)**

The ALJ found that Plaintiff was insured for disability benefits through June 30, 2007, and had not engaged in substantial gainful activity since the alleged onset date of January 5, 2004. The ALJ found that Plaintiff had the severe impairment of late effects of cerebrovascular disease, but that this impairment did not meet or medically equal a deemed-disabling impairment listed in the Commissioner's regulations. The ALJ found that the Plaintiff had the RFC to lift ten pounds frequently and 20 pounds occasionally, and to stand, walk, or sit for six hours each in an eight-hour work day. Plaintiff could not

climb ropes, ladders or scaffolds, or work at unprotected heights, and could only occasionally climb stairs and ramps.

The ALJ found that Plaintiff was unable to perform any past relevant work. The ALJ stated that Plaintiff was closely approaching advanced age, and therefore, if the case were to be determined under the Guidelines, the transferability of job skills would not be material to the determination of disability, as a person of Plaintiff's age, education, and RFC to perform the full range of light work would be considered disabled, under the Guidelines, with or without transferrable skills. The ALJ stated, however, that Plaintiff was not able to perform the full range of light work due to certain limitations noted in the ALJ's RFC assessment, and so "[t]o determine the extent to which these limitations eroded the light unskilled occupational base," the ALJ looked to the testimony of a VE. Relying upon the VE's testimony regarding the job of motel housekeeping supervisor, the ALJ held that Plaintiff was capable of making a successful adjustment into this skilled work, and was, therefore, not disabled under the Social Security Act.

**Appeals Council Decision of November 21, 2008 (Tr. 1-5)**

Plaintiff sought review by the Appeals Council, arguing that he lacked transferable skills and could not perform semi-skilled or skilled work, contrary to the ALJ's finding. Upon granting review, the Appeals Council observed that at the date last insured, Plaintiff was 61, which was defined in the Commissioner's regulations, 20 C.F.R. § 404.1563(e), as closely approaching retirement age (age 60 or older). Accordingly, under the Guidelines, the issue of Plaintiff's job skills and their transferability was relevant to the determination

of disability.[2]

The Appeals Council noted that § 202.00(f) of the Guidelines advised that for a finding of transferability of skills to light work for individuals who were closely approaching retirement age, there must be little vocational adjustment required in terms of tools, work processes, the work setting, or industry.

The Appeals Council concurred in the ALJ's RFC assessment, and held that Plaintiff's contentions that he lacked transferable skills were without evidence and contrary to the testimony of the VE. Based on the VE's testimony, the Appeals Council concluded that Plaintiff was not under a disability at any time since the alleged onset date through his last insured date of June 30, 2007.

## DISCUSSION

**Standard of Review and Statutory Framework**

In reviewing the denial of Social Security disability benefits, a court must affirm the Commissioner's decision "so long as it conforms to the law and is supported by substantial evidence on the record as a whole." Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (citation omitted).

To be entitled to benefits, a claimant must demonstrate an inability to engage in any

---

[2] Under the Guidelines, an individual of Plaintiff's age and education (high school graduate or more) who was limited to light work is considered disabled if his previous work experience was (1) unskilled work or (2) skilled or semi-skilled where skills were not transferable; whereas an individual of the same age and education with previous work experience that was skilled or semi skilled, where the skills were transferable, is not disabled. Guidelines, Rules 202.06 and 202.07.

10

substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability. The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If so, benefits are denied. If not, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments. A severe impairment is one which significantly limits a person's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a).

If the claimant does not have a severe impairment that meets the duration requirement, the claim is denied. If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is equal to one of the deemed-disabling impairments listed in the Commissioner's regulations. If not, the Commissioner asks at step four whether the claimant has the RFC to perform his past relevant work. If so, the claimant is not disabled. If he cannot perform his past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors.

If a claimant can perform the full range of work in a particular category of work (heavy, medium, light, and sedentary) listed in the Commissioner's regulations, the

Commissioner may carry this burden by referring to the Commissioner's Guidelines, which are fact-based generalizations about the availability of jobs for people of varying ages, educational backgrounds, and previous work experience, with differing degrees of exertional impairment. Where a claimant cannot perform the full range of work in a particular category due to nonexertional impairments such as pain, the Commissioner cannot carry the step-five burden by relying on the Guidelines, but must consider testimony by a VE as to the availability of jobs that a person with the claimant's profile could perform. Baker v. Barnhart, 457 F.3d 882, 888 n.2, 894-95 (8th Cir. 2006). Here, the ALJ decided at step five that, based upon the VE's testimony, Plaintiff could perform the job of housekeeping supervisor at a hotel or motel, and was thus not disabled.

**Transferability of Skills**

Plaintiff does not challenge the assessment of his RFC by the ALJ, as adopted by the Appeals Council. Rather he challenges the Appeals Council's finding that he had skills that were transferable to the job of housekeeping supervisor. He argues that the Appeals Council did not comply with Social Security Ruling ("SSR") 82-41, which addresses the issue of transferability of skills and states as follows, in relevant part:

> When the issue of skills and their transferability must be decided, the . . . ALJ is required to make certain findings of fact and include them in the written decision. Findings should be supported with appropriate documentation.
>
> When a finding is made that a claimant has transferable skills, the acquired work skills must be identified, and specific occupations to which the acquired work skills are transferable must be cited in the . . . ALJ's decision . . . . It is important that these findings be made at all levels of adjudication to clearly establish the basis for the determination or decision for the claimant and for a

12

reviewing body including a Federal district court.

1982 WL 31389, at *7.

The SSR defines "skill" as,

> knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled level (requires more than 30 days to learn). It is practical and familiar knowledge of the principles and processes of an art, science or trade, combined with the ability to apply them in practice in a proper and approved manner. This includes activities like making precise measurements, reading blueprints, and setting up and operating complex machinery. A skill gives a person a special advantage over unskilled workers in the labor market.

Id. at *2. "Transferability" is defined as "applying work skills which a person has demonstrated in vocationally relevant past jobs to meet the requirements of other skilled or semiskilled jobs." Id..

Further, 20 C.F.R. §404.1568(d) provides that a claimant who is close to retirement age who has a severe impairment will not be considered able to adjust to skilled or semi-skilled light work unless the light work "is so similar" to his previous work that he "would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry."

SSRs do not carry the "force of law," but they are binding on "all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1); Grebenick v. Chater, 121 F.3d 1193, 1200-01 (8th Cir.1997). Here, the VE testified with specificity with regard to the skills Plaintiff possessed from past work, and with regard to these skills' transferability to the job of housekeeping supervisor, a job for which there was a "precise match of

13

transferability with respect to materials, products, subject matter and work procedures." The Court believes that the VE's testimony comports with SSR 84-12, the Commissioner's regulations, and with the record evidence.

Although the Appeals Council did not include express findings of fact with regard to transferability of skills, the VE testified to those facts, which were then relied upon by the Appeals Council. Under Eighth Circuit law, this is sufficient. See Tucker v. Barnhart, 130 F. App'x 67 (8th Cir. 2005) (per curiam) (holding that where the ALJ properly relied upon a VE's testimony to find that the claimant had transferable skills, the ALJ was not required to identify these skills in finding that the claimant was not disabled under the Guidelines). Id. at 68 (citing Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 548-50 (6th Cir. 2004) (holding that SSR 82-41 requires specific findings only when the ALJ relies exclusively on the Guidelines to reach a determination)); but see Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1224-1225 (9th Cir. 2009) (rejecting the approach taken in Wilson and holding that specific findings under SSR 82-41 are required even when the ALJ relies on a VE's testimony)); Draegert v. Barnhart, 311 F.3d 468 (2d Cir. 2002) (same).

## **CONCLUSION**

The Commissioner's determination regarding the transferability of skills and Plaintiff's ability to perform jobs that existed in the national economy in substantial numbers is supported by sufficient evidence.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**.

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated this 15th day of March, 2010.